**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,     )
                                 )
          v.                    )     Criminal No. 18-13
                                 )     Civil No. 22-77
                               )     Judge Nora Barry Fischer
SCOTT JOSEPH PAYNE,        )
                                 )
         Defendant.     )

## <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

This matter is before the Court on a motion to vacate sentence under 28 U.S.C. § 2255, filed by *pro se* Defendant Scott Joseph Payne, (Docket No. 101), his Response to the Court's *Miller* Order, (Docket No. 105), and the Government's response in opposition, (Docket No. 107). After careful consideration of the parties' submissions and for the following reasons, Defendant's Motion [101] is denied.

### II.    BACKGROUND

A federal grand jury returned an indictment on January 16, 2018 charging Defendant with three counts of inducing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); three counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). (Docket No. 1). The relevant conduct underlying the indictment took place in April and June 2017. (*Id.*). On September 19, 2019, Defendant pled guilty to one count of inducing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); and one count of possession of child pornography, in violation of § 2252(a)(4)(B). (Docket No. 65). Pursuant to the plea agreement, the Government

1

agreed to move to dismiss the remaining counts of the indictment. (Docket No. 63-1 at 4). In the agreement, the parties stipulated to an agreed-upon sentence of 216 months under Federal Rule of Criminal Procedure 11(c)(1)(C). (*Id.* at 6).

At his guilty plea hearing, the Court's deputy clerk administered the oath to Defendant. (Docket No. 104 at 3). After asking Defendant a series of questions about his educational background and health, the Court asked Defendant if he understood "what's happening here today," to which he replied, "Yes, Your Honor." (*Id.* at 5). His counsel confirmed Defendant's statement. (*Id.* at 6). The Court concluded, "Mr. Payne, based on your appearance and demeanor, based on your answers to my questions, all of which have been appropriate, and based on your attorney's representations to me, I find you're competent" to proceed with guilty plea hearing. (*Id.*).

The Court then proceeded to ask if Defendant "had sufficient time to talk about [his] case with [his] attorney," and he replied, "Yes, Your Honor." (*Id.*). The Court asked, "Are you satisfied with the job he's done for you so far?" (*Id.*). Defendant said yes. (*Id.*). Defendant also confirmed that he had read the entire indictment, had reviewed it with his attorney, and had no "question, comment, or concern about the indictment or the charges." (*Id.*). He said that he understood what his attorney told him and had no further questions. (*Id.* at 7). The Court read out the two charges that Defendant intended to plead guilty to, and he indicated that he understood the nature of the charges. (*Id.* 7-8). One last time, the Court asked, "Right now you don't have any additional questions for either him or me about these charges; is that right?" (*Id.* at 8). Defendant said that he had no further questions. (*Id.* 8-9).

At this point in the hearing the Court reviewed, in detail, the rights Defendant would give up if he chose to plead guilty instead of proceeding to trial. These rights included the right to counsel, a jury, a speedy trial, and confrontation of witnesses, along with the right to testify or avoid self-incrimination. (*Id.* at 9-12). Once it finished going over Defendant's rights, the Court turned to

2

the plea agreement, dated September 18, 2019, which had been signed by Defendant and his counsel. (*Id.* at 14, 16). Defendant had a copy of the letter in front of him during the hearing, and he confirmed that he had seen it before. (*Id.* at 14). The Court asked Defendant if he wanted to re-read the agreement, but he declined. (*Id.* at 15). He also indicated that his counsel "went over the plea agreement" with him before the hearing. (*Id.*). Lastly, the Court asked him if he had any additional questions about the plea agreement for his counsel or the Court, but Defendant said no. (*Id.*). The Court also confirmed that no other plea agreement had been offered by the Government. (*Id.* at 16-17).

Next, the Government reviewed the plea agreement in detail. The Government explained that Defendant faced a mandatory minimum of ten years and a maximum of life imprisonment for the count of inducing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (*Id.* at 19-20). Defendant also faced a ten-year minimum and twenty-year maximum on the count for possession of child pornography, in violation of § 2252(a)(4)(B). (*Id.* at 20). The parties stipulated to an offense level of 38 under the advisory guidelines. (*Id.* at 22). Most importantly, the parties stipulated to a sentence of "18 years" pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (*Id.*). Once the Government completed its review, the Court asked Defendant if "you agree with these terms, sir?" (*Id.* at 23). He replied, "Yes, Your Honor." (*Id.*). Later, when asked its position regarding the applicable advisory guideline range, the Government, based on a belief that Defendant would be in criminal history category II, said that the range was 260 to 327 months. (*Id.* at 34-35). Thus, the lower end of the range provided by the Government at the hearing was forty-four months higher than the parties' stipulated sentence of 18 years (or 216 months) incarceration.

At the direction of the Court, the Government proceeded to list the elements of each charge that it would need to prove at trial. (*Id.* at 36-37). The Court asked Defendant, "Mr. Payne, you understand that if you decided to go to trial, the Government would have to prove each element of

each of these offenses beyond a reasonable doubt in order to show you're guilty? Do you understand that?" (*Id.* at 37). Defendant said, "Yes, Your Honor." (*Id.*). The Government then provided a summary of the evidence that it would produce at trial to prove Defendant's guilt.

> As recounted by the Government:

> The investigation of this particular case was first undertaken by local authorities in Bloomfield, New Jersey, after a 15-year-old boy from Bloomfield, identified as Minor Victim No. 1, on April 10th of 2017 entered the police department and reported a suspicious incident or incidents involving a user he knew to be quote/unquote, WinnieM86. . . . Minor 1 articulated that he had been communicating with WinnieM86 over a social network -- Internet-available social network known as KIK. (*Id.* at 37).

The Government continued, "WinnieM86 portrayed him- or herself as a 15-year-old girl from Pennsylvania" who "spent approximately two days coercing and enticing this particular victim to produce still images and videos of him performing sex acts. (*Id.* at 37-38). The victim provided his cell phone which contained the images and videos, and law enforcement ultimately tracked WinnieM86 to Defendant's residence in McKeesport, Pennsylvania. (*Id.* 38-39).

On June 10, 2017, law enforcement executed a search warrant at Defendant's residence while he was home. (*Id.* at 39). Law enforcement spoke with Defendant who admitted to communicating with the victim from New Jersey and obtaining the images and videos. (*Id.* at 40). He also provided a cell phone that included sexual images and videos of two other victims. (*Id.*).

Once the Government finished, the Court asked Defendant if "there are any additions or corrections you would like to make" to the Government's recitation of the facts, and Defendant said, "No, Your Honor." (*Id.* at 41). The Court continued, "Mr. Payne has agreed with the prosecutor's summary as to what he did. Is that correct, Mr. Payne?" (*Id.*). Defendant said, "Yes, Your Honor." (*Id.*). Before accepting Defendant's guilty plea, the Court asked, "Mr. Payne, has anyone made any kind of a threat to you or anyone else that's forced you to plead guilty?" (*Id.* at 42). Defendant said,

"No, Your Honor." (*Id.*). The Court next asked, "Has anyone made any kind of prediction or a promise to you as to what your actual sentence will be?" (*Id.*). Defendant replied, "No, Your Honor." (*Id.* at 43). Lastly, the Court asked, "Have you been instructed by any attorney, including your own, the attorney for the Government, or anyone else to respond untruthfully to a question about a promised sentence?" (*Id.*). Like with the other questions, Defendant said, "No, Your Honor." (*Id.*).

After again reviewing Defendant's mental competence to plead guilty, the Court asked two final questions. It first asked, "And you are now voluntarily and of your own free will planning to plead guilty; is that correct?" (*Id.*). Defendant confirmed. (*Id.*). The Court then asked, "Once again, are you satisfied in all respects with the advice and representation of your attorney up to this point?" (*Id.* at 43-44). For the second time that day, Defendant said, "Yes, Your Honor." (*Id.* at 44). Upon hearing Defendant's statements, made under oath, the Court asked Defendant how he intended to plead to the two charges, and he replied, "Guilty, Your Honor." (*Id.*). The Court accepted Defendant's guilty plea after finding his plea was knowing and voluntary. (*Id.*).

In preparation for sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PIR"). (Docket No. 72). Based on Defendant's offense conduct and criminal history, which included a prior state court conviction for disseminating child pornography, the PIR indicated that Defendant faced an advisory guideline range of 292 to 365 months. (*Id.* at ¶¶ 29, 32, 36, 62). Thus, Defendant's agreed-on sentence with the Government of 216 months was 76 months below the low end of the advisory guideline range.

Before sentencing, Defendant's retained counsel, Patrick Thomassey, Esq., filed a motion to withdraw as counsel. (Docket No. 87). In his motion, Thomassey explained that after Defendant pled guilty, Defendant wrote "several letters in which he maintains his innocence and contends that his plea was coerced and not in his best interests." (*Id.* at 1). Thomassey further stated that he "attempted (without success) to explain the benefits of the plea which has caused a complete and

utter deterioration of the lawyer-client relationship." (*Id.* at 2). The Court granted the motion, (Docket No. 89), and appointed Martin Dietz, Esq. to represent Defendant, (Docket No. 88).

The Court held a sentencing hearing on December 16, 2020. (Docket No. 96). Like before, the Court's law clerk administered the oath to Defendant, and the Court again probed Defendant's relationship with his counsel. The Court asked, "Now have you and Mr. Dietz been able to talk about your case without any problems?" (Docket No. 106 at 5). Defendant and his counsel confirmed. (*Id.* at 5-6). Again, the Court found Defendant competent to proceed. (*Id.* at 7). After reviewing the PIR and the Court's tentative findings and rulings, the Court asked Defendant if "Mr. Dietz or prior counsel" went over the PIR and tentative findings and rulings with him. (*Id.* at 11). He answered yes, and he said he had no further questions for his counsel. (*Id.*). Before imposing a sentence, the Court asked Defendant if he had any statement he wanted to make to the Court, but Defendant declined. (*Id.* at 21). Ultimately, the Court accepted the parties' plea agreement and sentenced Defendant to 216 months (eighteen years) in accordance with the plea agreement. (*Id.* at 21, 27). Finally, the Court asked Defendant, one more time, if "there [is] anything you want to advise the Court or anyone else here before" the hearing ended. (*Id.* at 38). Defendant once again replied, "No." (*Id.*).

Neither the Government nor Defendant appealed the Court's judgment. Instead, on July 16, 2021, Defendant filed correspondence with the Court, that the Court construed as a motion to vacate sentence under 28 U.S.C. § 2255. (Docket No. 101). On the same day, the Court notified the Defendant that he needed to amend his motion to include any additional claims in support of relief pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999). (Docket No. 102). Defendant filed a Response to the Court's order on October 19, 2021. (Docket No. 105). From there, the Government countered Defendant's motion with a response in opposition on November 4, 2021. (Docket No. 107). The Court ordered that any Reply by Defendant was due by December 2, 2021, but he declined

to file a Reply. (Docket No. 109). As such, the Court considers Defendant's motion fully briefed and ripe for disposition.

### III.   LEGAL STANDARD

A prisoner sentenced by a federal court may move to vacate his sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States" or "is otherwise subject to collateral attack." A § 2255 motion must be filed within one year of when the date the judgment of conviction becomes final. *See id.* § 2255(f)(1).

Generally, a court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992); *see also United States v. Tolliver*, 800 F.3d 138, 140-41 (3d Cir. 2015). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also Tolliver*, 800 F.3d at 140-41. If a hearing is not held, the court must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). In the Court's view, Defendant's motion can be decided after review of the records in the case, and thus a hearing is not necessary.

### IV.   DISCUSSION

Defendant claims that his retained attorney, Patrick Thomassey, "forced" Defendant into a plea deal with the Government, even though Defendant was innocent of the charges in the indictment. (Docket No. 101 at 1). Defendant elaborates that Thomassey allegedly "did not go over my case with me at all. He told me to take a plea deal because he would lose my case." (*Id.*). Further,

"[Thomassey] called in and scared me and forced me into a plea deal that I did not want." (*Id.*).
Lastly, Thomassey allegedly said that if Defendant "spoke up in the courtroom I would get in
trouble" and that "Thomassey told me to just agree with everything and say yes." (*Id.*). Defendant
maintains that he was told that he would receive ten years' imprisonment and a couple years of
probation. (*Id.*). According to Defendant, Thomassey further explained that Defendant "would do a
few more years" and then be released. (*Id.* at 2). Instead, Defendant received 18 years'
imprisonment. In sum, Defendant appears to complain of ineffective assistance of counsel through
his counsel allegedly coercing him to plead guilty despite his claimed innocence. As relief,
Defendant wants to withdraw his guilty plea. (*Id.* at 3). Aside from his assertions, Defendant
provides no evidence or details regarding his counsel's behavior. The Government maintains that
Defendant's motion is without merit and should be denied without a hearing.  (Docket No. 107)
Having considered the parties' arguments, the Court finds that Defendant's claim lacks merit.[1]

To establish an ineffective assistance of counsel claim, a defendant must first show that
"counsel's representation fell below an objective standard of reasonableness" under "prevailing
professional norms." *Collins v. Sec'y of the Pa. Dep't of Corr.*, 742 F.3d 528, 546 (3d Cir. 2014)
(quotation marks and citation omitted). The Supreme Court has emphasized that judicial scrutiny of
defense counsel's performance is "highly deferential," and a "strong presumption" exists that
"counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v.
Washington*, 466 U.S. 668, 690 (1984). Additionally, "strategic choices made after thorough
investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.*

---

[1]     Defendant's ineffective-assistance-of-counsel claim is not procedurally defaulted on
collateral review even though he did not raise it on direct appeal. *Massaro v. United States*, 538 U.S.
500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a
collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct
appeal.").

If a defendant establishes that his counsel's performance fell below an objective standard of reasonableness, he must then "show prejudice such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Collins*, 742 F.3d at 546 (quotation marks and citation omitted). When a defendant claims that his guilty plea resulted from ineffective assistance of counsel, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Here, Defendant's ineffective assistance claim fails because his counsel's representation did not fall below an objective standard of reasonableness.

Defendant's statements about being forced to plead guilty by a negligent attorney who threatened him, promised a ten-year sentence, and told him to "agree to everything" at the guilty plea hearing fly in the face of his statements made under oath. Defendant told the Court the following at the guilty plea hearing: (1) his attorney adequately reviewed his case with him and answered his questions, (Docket No. 104 at 6-9); (2) his attorney had not made any threats or promises to induce him to plead guilty, (*Id.* at 42); (3) no one, including his attorney, had told him to lie to the Court at his guilty plea hearing, (*Id.*); (4) the plea agreement contained an agreed-on sentence of 18 years that was read to Defendant at the hearing, and which he acknowledged, (*Id.* at 14-14, 22-23); and (5) Defendant was satisfied with the performance of his counsel up to the point at which he pled guilty, (*Id.* at 6, 43-44).

As courts have repeatedly held, "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. James*, 928 F.3d 247 (3d Cir. 2019). In the Court's view, Defendant's statements in his § 2255 motion, made in conclusory fashion and without evidentiary support, do not overcome

the "strong presumption of verity," of his statements made under oath. Faced with Defendant's conflicting statements, the Court will rely on those Defendant made under oath in which Defendant expressed satisfaction with his counsel, denied any coercive behavior by his counsel, and admitted guilt. Given same, Defendant's counsel was not ineffective.

The Third Circuit has addressed similar factual scenarios to the one at hand, albeit at a different procedural posture. In *United States v. Jones*, when a defendant sought to withdraw his guilty plea before sentencing, the Third Circuit observed that "[o]nce a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." 336 F.3d 245, 252 (3d Cir. 2003). "Bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Id.* Rather, "[a]ssertions of innocence must be buttressed by facts in the record that support a claimed defense." *Id.* (internal quotation marks and citation omitted). "Once a defendant has pleaded guilty, he 'must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *Id.* (internal quotation marks and citation omitted).

In *Jones*, the Third Circuit rejected several arguments similar to those made by Defendant in the present case. First, it refused to believe the defendant's claim that his counsel had promised a particular sentence when the plea colloquy revealed that the defendant stated, under oath, that no one "had made any threat or promise or assurance of any kind to convince him to plead guilty." *Id.* at 254; *see also James*, 928 F.3d at 257. Also, given his statements under oath to the contrary, the defendant failed to convince the Third Circuit of "his contentions that his prior counsel did not adequately investigate his defenses or effectively utilize the information he did possess." *Jones*, 336 F.3d at 255; *James*, 928 F.3d at 258. It elaborated:

Jones has not pointed to any specific act or omission or objective evidence to support his blanket contentions. Furthermore, his allegations are undermined by his own statements in the record. At the December 4, 2000 guilty plea proceeding, Jones indicated that he was satisfied with prior counsel's representation. The Court queried him as to whether "you feel you have—that you have discussed fully your case with Mr. Thompson ... [a]nd are you satisfied with [ ]his representation of you?" Jones answered both questions in the affirmative. *Jones*, 336 F.3d at 255; *James*, 928 F.3d at 258.

Likewise, in *United States v. James*, also a case involving a defendant seeking to withdraw his guilty plea before sentencing, the Third Circuit rejected a defendant's claim of innocence because he had admitted the factual basis of his guilt under oath. 928 F.3d at 256 ("But, in all of this it must be remembered that James admitted under oath to the underlying facts of the offense during the plea colloquy and made no mention of [innocence] then. His factual admissions 'carry a strong presumption of verity.'" (footnote and citation omitted)).

*Jones* and *James* demonstrate that statements made in Defendant's present motion that contradict what he said under oath should be rejected. *See, e.g.*, *Bonner v. United States*, 2010 WL 3419437, at *6 (W.D. Pa. Aug. 26, 2010) (Lancaster, J.) (applying *Jones* to § 2255 context); *Santana Ferguson v. United States*, 2016 WL 6126926, at *7 (D.N.J. Oct. 18, 2016) (same). He has not "give[n] sufficient reasons to explain why contradictory positions were taken before the district court." *Jones*, 336 F.3d at 252. His reasons for his contradiction appear to be that (1) he thought he was going to receive a promised a ten-year sentence when he pled guilty, not the eighteen-year sentence he received, and (2) he was scared, apparently of receiving many decades in prison if found guilty at trial. (Docket No. 101 at 1).

His first excuse is flatly contradicted by the record because he heard the Government state that that the agreed-on sentence was eighteen years. (Docket No. 104 at 14-15, 22-23); *United States v. Hardy*, 2013 WL 3830507, at *9 (W.D. Pa. July 23, 2013) ("The record further discloses that Defendant never raised this present allegation that he was promised a sentence of ten years, despite multiple opportunities to do so. As such, he never repudiated his sworn statements at the change of

plea hearing that no one, including [his counsel], had promised him anything regarding a sentence."). For his second, as the Court sees it, fear of a steep sentence is not a satisfactory excuse to lie (allegedly) under oath about one's guilt. *See United States v. Hernandez*, 378 F. App'x 145, 150-51 (3d Cir. May 6, 2010) (rejecting a defendant's fear of a potential life sentence as an excuse for allegedly lying about his guilt at a plea hearing because "[i]t is inherent that 'the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.'" (citation omitted)).

For all of these reasons, the Court finds that there is no basis in law or fact justifying the extraordinary relief to set aside Defendant's valid sentence under § 2255. *See United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). Accordingly, his motion is denied.

## V.  CONCLUSION

Based on the foregoing, Defendant's motion to vacate his sentence under 28 U.S.C. § 2255 [101] is denied, with prejudice. The Court also holds that Defendant has failed to make a substantial showing of the denial of a Constitutional right and is not entitled to a certificate of appealability. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: March --, 2022

cc/ecf: All counsel of record

Scott Joseph Payne

 BOP # 38852-068

FCI Elkton

P.O. Box 10

Lisbon, OH 44432

(via U.S. mail)